IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERI TRETTER, individually and as | : | |
| Administratrix of the Estate of | : | |
| WILLIAM BENDER, deceased, | : | |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS | : | |
| and | : | |
| SCI FRACKVILLE | : | |
| and | : | **NO. 11-423** |
| PHS CORRECTIONAL HEALTHCARE | : | |
| and | : | |
| NICHOLAS SCHARFF, M.D. | : | |
| and | : | |
| SCOTT STERLING, D.O. | : | |
| and | : | |
| ROBERT SCHORSCHINSKY, D.O. | : | |
| and | : | |
| STANLEY STANISH, M.D. | : | |
| and | : | |
| RICHARD KOSIEROWSKI | : | |
| and | : | |
| BRIAN SHIPTOSKI, D.O. | : | |
| and | : | |
| RENATO T. DIAZ, M.D. | : | |
| and | : | |
| JACK ROBINSON, RNS | : | |
| and | : | |
| DANIEL ZAREMBA, RN | : | |
| and | : | |
| PATRICIA WOLFE, RN | : | |
| and | : | |
| BRENDA HOUSER, RN | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Sheri Tretter, as Administratrix of the Estate of William Bender ("Mr. Bender"),

deceased, by and through her attorneys, Gay Chacker & Mittin, P.C., hereby asserts the following

Complaint against defendants, Pennsylvania Department Of Corrections ("DOC"), SCI

Frackville ("Frackville"), PHS Correctional Healthcare ("PHS"), and Nicholas Scharff, M.D.,

Scott Sterling, D.O., Robert Schorschinsky, D.O., Stanley Stanish, M.D., Richard Kosierowski

Brian Shiptoski, D.O., and Renato T. Diaz, M.D. (collectively "physician defendants"), and Jack

Robinson, RNS, Daniel Zaremba, RN, Patricia Wolfe, RN, and Brenda Houser, RN, (collectively

"nurse defendants")(all defendants collectively "defendants") as follows:

### Parties

1.       Plaintiff, Sheri Tretter ("Ms. Tretter"), is an adult individual, the mother of

decedent plaintiff, William Bender, and the Administratrix of Mr. Bender's Estate.

2.       William Bender ("Mr. Bender") died on July 8, 2011 at PNC Shadyside Hospital

in Pittsburgh, Pennsylvania as a result of complications from metastatic cancer that developed as

a result of the malpractice of the defendants herein.

3.       Defendant Pennsylvania Department of Corrections is a municipal agency

responsible for overseeing the operation of Frackville among other state correctional institutions.

It also is charged with contracting medical providers to the state correctional institutions it

oversees.  At all times relevant hereto, the DOC employed and/or contracted with PHS to provide

medical services at Frackville.  At all times material hereto, DOC acted and failed to act by,

through and on behalf of its duly authorized agents, ostensible agents, servants and employees,

including, but not limited to, the physician defendants, the nurse defendants and the diagnostic

defendants.

4.       Defendant SCI Frackville is a municipal agency within Frackville, Pennsylvania

and at all times relevant hereto was responsible for supervising Commonwealth employees and

agents working within its institution.  At all times material hereto, Frackville acted and failed to

2

act by, through and on behalf of its duly authorized agents, ostensible agents, servants and employees, including, but not limited to, the physician defendants, the nurse defendants and the diagnostic defendants.

5.      Defendant PHS Correctional Healthcare is, upon information and belief, a Tennessee corporation with its principal place of business located at 105 Westpark Drive, Suite, 200, Brentwood, Tennessee.  At all times relevant hereto, PHS was the contracted agent of the DOC and was responsible for providing staff and overseeing medical treatment to inmates at Frackville.  At all times material hereto, PHS acted and failed to act by, through and on behalf of its duly authorized agents, ostensible agents, servants and employees, including, but not limited to, the physician defendants, the nurse defendants and the diagnostic defendants.

6.      Defendant Nicholas Scharff, M.D. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

7.      At all times material hereto, defendant Dr. Scharff was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

8.      Defendant Scott Sterling, D.O. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

9.      At all times material hereto, defendant Dr. Sterling was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

10.      Defendant Robert Schorschinsky, D.O. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

11.      At all times material hereto, defendant Dr. Schorschinksy was a treating physician

3

of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

12.     Defendant Stan Stanish, M.D. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

13.     At all times material hereto, defendant Dr. Stanish was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

14.     Defendant Richard Kosierowski is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

15.     At all times material hereto, defendant Dr. Kosierowski was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

16.     Defendant B. Shiptoski, D.O. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

17.     At all times material hereto, defendant Dr. Shiptoski was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

18.     Defendant Renato T. Diaz, M.D. is a duly licensed physician practicing at SCI Frackville in Frackville, PA.

19.     At all times material hereto, defendant Dr. Díaz was a treating physician of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

20.     Defendant Jack Robinson, RNS is a duly licensed nurse practicing at SCI

4

Frackville in Frackville, PA.

21.     At all times material hereto, defendant Robinson was a treating nurse of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

22.     Defendant Daniel Zaremba, RN is a duly licensed nurse practicing at SCI Frackville in Frackville, PA.

23.     At all times material hereto, defendant Zaremba was a treating nurse of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

24.     Defendant Patricia Wolfe, RN is a duly licensed nurse practicing at SCI Frackville in Frackville, PA.

25.     At all times material hereto, defendant Wolfe was a treating nurse of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

26.     Defendant Brenda Houser, RN is a duly licensed nurse practicing at SCI Frackville in Frackville, PA.

27.     At all times material hereto, defendant Houser was a treating nurse of Mr. Bender, acting individually and/or as an agent, ostensible agent, servant and/or employee of DOC, Frackville and PHS.

28.     At all times relevant to this Complaint, all defendants acted in concert and conspiracy and under color of state law, and their actions and inactions violated the plaintiff's constitutional and statutory rights.

**Jurisdiction**

29.     This action is brought pursuant to 42 United States Code Section 1983.

Jurisdiction is based upon 28 United States Code 1331, 1341(1),(3) and (4), and 1343(a)(3), and

1343(a)(4).  Plaintiff further invokes the supplemental jurisdiction under 28 United States Code

Section 1376(a) to hear and decide claims under state law.

**Facts**

30.     The term "defendants" in this Complaint refers to all defendants named in this

action collectively.  Each time that the term "defendants" is used, plaintiff is referring to each

individual defendant named in the Complaint and the averment should be considered to be

alleged against each individual defendant named in the Complaint.

31.     On July 26, 2007 Mr. Bender was admitted to Frackville to serve a sentence of

from ten to twenty-five years.

32.     Beginning in January of 2009, Mr. Bender began complaining to each of the

defendants of pain in his groin and a swollen left testicle.

33.     Between January, 2009 and March, 2010, on multiple occasions, Mr. Bender

advised DOC, PHS and Frackville medical professionals, including each of the physician

defendants and the nursing defendants, of the fact that his symptoms had worsened and that his

groin was becoming increasingly swollen, thus alerting any reasonably trained medical

professional of the risk of cancer and the need for immediate medical care and surgical

intervention.

34.     Mr. Bender repeatedly complained to the defendants that he had pain in his groin

and that one of his testicles was swollen.

35.     On February 17, 2009, Mr. Bender saw Dr. Nicholas Scharff and RN, Patricia

6

Wolfe and received Annual/Semi-annual PPD 0.1 Intraderma. Neither Dr. Scharff nor Nurse

Wolfe make any mention of Mr. Bender's complaint of swollen testicles despite Mr. Bender's

complaints. Additionally, no further treatment was offered to Mr. Bender at that time.

      36.     On March 11, 2009, Mr. Bender was seen by Jack Robinson, RNS, who noted an

inmate request for contact solution. Not only did Nurse Robinson deem Mr. Bender's request not

medically necessary, but he also failed to make any mention of Mr. Bender's repeated complaints

of swollen testicles or to provide any treatment for Mr. Bender's condition.

      37.     Between March 11, 2009 and August 6m 2009, Mr. Bender complained to all of

the defendants regarding his swollen testicles and his deteriorating condition. Despite Mr.

Bender's complaints and despite each defendant's personal knowledge of Mr. Bender's

deteriorating condition, none of the defendants offered any treatment or treatment options.

      38.     On August 6, 2009 Mr. Bender, was examined by defendant, Scott Sterling, D.O.

who finally noted, in light of Mr. Bender's deteriorating condition, that Mr. Bender's right

testicle could not be located and his left testicle had moved posteriorly.

      39.     On August 6, 2009, defendant Nurse Brenda Hauser noted a scrotal growth in Mr.

Bender's records.

      40.     On August 6, 2009, defendant, Brian Shiptoski, MS, NP. noted Mr. Bender's

swollen scrotal area and additionally noted that that the area had been swollen for the past 8

months. Defendant Shiptoski approved Mr. Bender for an ultrasound of his scrotum to be done

on August 19, 2009.

      41.     On August 6, 2009, after eight months of complaining to the defendants about his

swollen scrotal area, Mr. Bender's medical concerns finally began to get addressed.

      42.     During the eight months before defendants finally started to provide Mr. Bender

with some limited medical treatment, defendants were aware that Mr. Bender required medical attention and refused to provide it.

43.     During the eight months before defendants finally started to provide Mr. Bender with medical treatment, defendants were aware that Mr. Bender's swollen testicle and groin area posed a substantial risk of cancer and, despite that knowledge, refused to provide him with the medical attention required.

44.     During the eight months before defendants finally started to provide Mr. Bender with medical treatment, defendants were aware that their failure to provide Mr. Bender with medical care would lead to the worsening of Mr. Bender's condition and, in particular any testicular cancer from which Mr. Bender was suffering.  Despite that knowledge, defendants refused to provide him with the medical attention required.

45.     Despite the fact that defendants were aware of Mr. Bender's deteriorating condition and that he was suffering from testicular cancer, he was not given any medical treatment for his condition until August 6, 2009.

46.     Defendants were aware that persons who present with the symptoms being displayed by Mr. Bender require prompt and specialized medical care and attention.

47.     Further, all defendants were aware that someone who suffers from swollen and painful groin and testicle and is denied treatment poses a substantial risk of worsening of the cancer from which he was suffering.

48.     Defendants observed Mr. Bender's deteriorating condition and were aware that he was at a substantially increased risk of cancer and a worsening of his cancer because of his deteriorating condition.

49.     Despite the symptoms presented by Mr. Bender, defendants failed to undertake

8

prompt and appropriate medical care and attention and/or failed to ensure that prompt and appropriate medical care and attention was provided to Mr. Bender. Instead, Mr. Bender was ignored and told that he would not be provided treatment. Further, he was not given an evaluation until August 6, 2009.

50.     The above was done with the knowledge of DOC, Frackville, PHS, the physician defendants and the nursing defendants.

51.     Notwithstanding the need for immediate medical care and attention, all defendants failed to provide Mr. Bender with care and/or medication for an extended period, causing Mr. Bender to suffer further injury and harm, and ultimately, his death.

52.     The failure of DOC, Frackville, PHS, the physician defendants and the nursing defendants to provide prompt and appropriate medical care and attention caused Mr. Bender's symptoms to worsen and resulted in severe injury and harm, and ultimately, his death.

53.     The failure of DOC, Frackville, PHS, the physician defendants and the nursing defendants to ensure that proper medical treatment and attention was provided to Mr. Bender and that he was properly monitored as they observed his symptoms worsening despite knowing that cancer was a serious risk under the circumstances caused Mr. Bender's symptoms to worsen and resulted in severe injury and harm, and ultimately, his death.

54.     Between January 2009 and August 6, 2009, on numerous occasions, Mr. Bender advised defendants of the fact that his symptoms had worsened, that he needed medical attention, and that his testicle was getting more swollen, and that he was having severe pain in his groin, among other things, thus alerting any reasonable medical professional, including the physician defendants and the nursing defendants, of the need for immediate medical care and possible need for a detailed diagnostic testing and cancer treatment.

55.     At no time between January 2009 and August 6, 2009 did any of the defendants, or any other employees of defendants DOC, Frackville, or PHS, take steps to ensure that Mr. Bender received necessary medical care and attention for his swollen testicle, groin pain and other symptoms.

56.     At no time between January 2009 and August 6, 2009, did any of the defendants, or any other employees of defendants DOC, Frackville or PHS, take steps to ensure that Mr. Bender received any medical treatment.  On the contrary, defendants refused to provide medical treatment.

57.     Between January 2009 and August 6, 2009, DOC, Frackville, PHS, the physician defendants and the nursing defendants were on notice of Mr. Bender's need for immediate medical attention and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment.

58.     Between January 2009 and August 6, 2009, DOC, Frackville, PHS, the physician defendants and the nursing defendants were on notice of Mr. Bender's need for medical and specifically cancer treatment and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment.

59.     On August 10, 2009, Dr. Sterling noted a grapefruit size mass in Mr. Bender's left scrotum.  The records reflect that Mr. Bender had "a grapefruit size mass L scrotum, cannot locate rt testicle, L testicle moved posterior."

60.     On August 22, 2009, three days after it was supposed to be done, Lackawanna Mobile Diagnostic and Dr. Gregory performed an ultrasound and diagnosed a normal right testicle and 13 mm testicular cysts involving head of right epididytimis, left testicle absent and left hemiscrotum enlarged and filled with large complex mass measuring 8x6 cm of unclear

10

etiology.  Clinical correlation is suggested and further evaluation with MRI.

61.     Defendant Dr. Stanislaw signed off on the radiologists report

62.     On August 24, 2009, following the radiologist's ultra sound report, defendant Dr
Schorschinsky made a referral to for a urologic consult.

63.     On August 27, 2009, defendant Richard Kosierowski noted the abnormal ultra
sound and ordered that if no evidence of inguinal hernia with scrotal extension is determined on
physical examination Mr. Bender could be approved for evaluation by urologist.

64.     No follow-up treatment was provided to Mr. Bender after that date despite his
complaints to all defendants until February 22, 2010, and even then, the treatment failed to
investigate the possibility of cancer.

65.     On February 9, 2010, Dr. Sterling performed a Triennial Physical on Mr. Bender,
but made no reference to his swollen scrotum and took no steps to diagnose Mr. Bender's
condition or rule out a hernia.

66.     On February 22, 2010, defendant Brian Shiptoski, M.S, N.P. examined Mr.
Bender and noted a left inguinal hernia but took no steps, diagnostic or otherwise to actually
determine if Mr. Bender's condition was a hernia.

67.     Defendant Shiptoski simply followed standard procedure for all complaints in the
groin area of an inmate and diagnosed a hernia.

68.     On February 24, 2010, a laboratory work up, ordered by Dr. Sterling on February
23, 2010, indicated the possibility of a liver carcinoma and showed an elevated LDH which is an
indication of acute chronic tissue damage.

69.     As second laboratory study was ordered by Dr. Sterling, from which Dr. Sterling
received the results on March 12, 2010, which report again indicated the presence of liver

11

carcinoma and chronic tissue damage.

70.     On March 17, 2010, some 8 months after an ultra sound indicated the possibility of cancer, Dr. Sterling, finally made a referral for a urologist, which report indicated that a neoplasm could not be excluded. The purpose, finally, was to rule out hepatic carcinoma.

71.     By March 24, 2010, Brian Shiptoski, MS, PN ordered Tylenol and an ice pack for Mr. Bender, while defendant Renato T. Diaz, M.D., noted that Mr. Bender was complaining of problems with urination. Dr. Diaz scheduled Mr. Bender for another diagnostic study.

72.     On March 25, 2010, another ultrasound was performed noting hyper echoic lesion in right lobe of liver, carcinoma not excluded, clinical correlation and additional imaging of liver and pancreas by CT scan was recommended.

73.     On March 26, 2010, Brian Shiptoski, MS, NP noted scrotal pain and discomfort

74.     On April 2, 2010, Brian Shiptoski, MS, NP ordered 500mg of Tylenol to be taken for 2 weeks, BID.

75.     On April 4, 2010, Mr. Bender complained to Daniel Zaremba, RN of abdominal pain and told Nurse Zaremba that he had had a hernia for 7 months. Importantly, defendants still had not told Mr. Bender of his cancer.

76.     On April 5, 2010, Dr. Sterling discussed Mr. Bender's pain complaints with Dr. Stanish. Defendants Sterling and Stanish decided that, because a liver mass was indicated, Mr. Bender should be transferred to St. Catherine's Emergency Room for evaluation.

77.     On April 5, 2010, Mr. Bender was taken to St. Catherine's Medical Center ER complaining of increasing discomfort with his left testicle and swelling. Mr. Bender advised that his testicle had grown larger over the last 14 months.

78.     At St. Catherine's Medical Center, Mr. Bender underwent another ultrasound of

his scrotum and a CT scan of his pelvis and abdomen.

79.    Those tests revealed a large left testicle calcification, no blood flow and multiple masses consistent with metatastic disease, most likely testicular carcinoma.

80.    After returning from St. Catherine's Emergency Room that same day, Mr. Bender was administered 2 vicodin and was cleared to return to cell block D by defendant Daniel Zaremba, RN.

81.    On April 6, 2010, Dr. Sterling finally noted Mr. Bender's metatstatic cancer and sent him to Altoona Hospital.

82.    Mr. Bender was rushed to Altoona Regional Hospital for surgery on his left testical.

83.    On April 7, 2010, Mr. Bender underwent a left radical orchiectomy and was found to have multiple low attenuation lesions throughout his liver consistent with diffuse hepatic metatastic disease, extensive retroperitoneal adenopathy with multiple nodal masses present, and a large testicular mass, widespread pulmonary parenchymal metastases with extensive lymphovascular invasion.

84.    Within a week following his surgery, Mr. Bender began chemotherapy.

85.    Mr. Bender received chemotherapy in Altoona Hospital, where he remained from April 15, 2010 through April 21, 2010

86.    He continued to undergo chemotherapy treatment until his death on July 8, 2011.

87.    Mr. Bender suffered from Stage III malignant non-seminoma left testicle cancer.

88.    The cancer spread to his liver, abdomen, and lungs.

89.    Defendants, despite knowing of the need for immediate follow-up care and the risks of a worsening of Mr. Bender's condition should that follow-up care not be provided, with

13

deliberate indifference refused and failed to send Mr. Bender for a follow-up diagnostic study until March 24, 2010.

90.     Between August 22, 2009 and March 24, 2010, on numerous occasions, Mr. Bender advised defendants of the fact that his symptoms had worsened, that he needed medical attention, and that his testicle was getting more swollen, and that he was having severe pain in his groin, among other things, thus alerting any reasonable medical professional, including the physician defendants and the nursing defendants, of the need for immediate medical care and possible need for a detailed diagnostic testing and cancer treatment.

91.     At no time between August 22, 2009 and March 24, 2010 did any of the defendants, or any other employees of defendants DOC, Frackville, or PHS, take steps to ensure that Mr. Bender received necessary medical care and attention for his swollen testicle, groin pain and other symptoms.

92.     At no time between August 22, 2009 and March 24, 2010, did any of the defendants, or any other employees of defendants DOC, Frackville or PHS, take steps to ensure that Mr. Bender received any medical treatment.  On the contrary, defendants refused to provide medical treatment.

93.     Between August 22, 2009 and March 24, 2010, DOC, Frackville, PHS, the physician defendants and the nursing defendants were on notice of Mr. Bender's need for immediate medical attention and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment.

94.     Between August 22, 2009 and March 24, 2010, DOC, Frackville, PHS, the physician defendants and the nursing defendants were on notice of Mr. Bender's need for medical and specifically cancer treatment and, with deliberate indifference, failed to take steps to

14

ensure that he received the necessary care and treatment.

95.     Moreover, even after sending Mr. Bender for diagnostic studies on March 24, 2010, defendants delayed another two weeks before sending him to a hospital where proper treatment could be rendered.

96.     At no time between January 2009 and March 2010 did any of the individual defendants or any other employee of DOC, PHS or Frackville take steps to ensure that Mr. Bender received necessary medical care and attention for his swollen testicle.

97.     Between January 2009 and March 2010, DOC, PHS and Frackville medical professionals were on notice of Mr. Bender's need for immediate medical attention and, with deliberate indifference, failed to take steps to insure that he received the necessary care and treatment.

98.     Despite seeing Mr. Bender on multiple occasions, none of the defendants ever provided Mr. Bender with any treatment. Instead, they simply advised Mr. Bender that his swollen scrotum was just a hernia. Further, the defendants never told Mr. Bender that he should come in for a follow-up or that there was any danger whatsoever to his health if his condition went untreated.

99.     As a result of the failure of the physician defendants and the nurse defendants to diagnose, treat or react in any way to Mr. Bender's abnormal scrotal swelling and ultrasound, Mr. Bender developed testicular cancer which spread throughout his body and ultimately led to his death.

100.    At no time did Mr. Bender know or have reason to know that he had been negligently treated by the physician defendants or the nurse defendants until, at the earliest, April 5, 2010, when he was first taken to St. Catherine's Medical Center and advised that he had

15

masses consistent with cancer.

101.    As a direct result of the failure of the physician defendants and the nurse defendants to diagnose treat or react in any way to Mr. Bender's swollen scrotum and abnormal ultrasound, Mr. Bender developed testicular cancer that spread throughout his body.

102.    As a direct result of the failure of the physician defendants and the nurse defendants to diagnose, treat or react in any way to Mr. Bender's swollen scrotum and abnormal ultrasound, Mr. Bender underwent extensive chemotherapy from April, 2010 through just prior to his death on July 7, 2011.

103.    As a direct result of the refusal and the failure of the physician defendants and the nurse defendants to diagnose treat or react in any way to Mr. Bender's swollen scrotum and abnormal ultrasound, Mr. Bender's life expectancy was radically shortened.

104.    But for defendants' refusal and failure to diagnose or to react or to treat in any way to Mr. Bender's swollen scrotum and cancer prior to March, 2010, Mr. Bender's condition would have been treatable and his life expectancy would not have been radically shortened.

105.    But for defendants' refusal and failure to diagnose or to react or to treat in any way to Mr. Bender's swollen scrotum and cancer prior to March, 2010, Mr. Bender would not have suffered the injuries set forth in this Complaint and ultimately, death.

106.    As a direct result of the failure of the physician defendants and the nurse defendants to diagnose, treat or react in any way to Mr. Bender's swollen scrotum and abnormal ultrasound, Mr. Bender suffered a loss of chance of recovery from his testicular cancer.

107.    At no time did any defendant or anyone associated with DOC, Frackville or PHS ever advise Mr. Bender that he should go see a specialist to evaluate his condition.

108.    At no time did any defendant or anyone associated with DOC, Frackville or PHS

16

ever permit Mr. Bender to see a specialist to evaluate his condition prior to March 17, 2010.

109.    Without any regard for Mr. Bender's safety, the physician defendants and the nurse defendants ignored Mr. Bender's medical condition and denied him medical treatment that he desperately needed

110.    The failure of the physician defendants and nurse defendants to provide prompt and appropriate medical care and attention caused Mr. Bender's symptoms to worsen and resulted in the development of testicular cancer which spread throughout his body.  If prison medical professionals had made arrangements for proper medical care and/or surgery on or before April, 2010, Mr. Bender's condition would not have been as severe as it became and Mr. Bender would not have died as he did on July 7, 2011.

111.    Notwithstanding the need for immediate medical care and attention and the symptoms presented on and before April, 2010, defendants did not provide Mr. Bender with needed specialized care until on or after April, 2010, causing Mr. Bender to suffer further and permanent injury.

112.    Defendants failed to protect Mr. Bender and knowingly failed to provide him with medical treatment that he desperately needed related to his swollen scrotum and cancer.

113.    Defendants showed deliberate indifference to Mr. Bender's physical health and safety when they improperly failed to examine his scrotum and investigate the possible causes of his condition, including cancer, and failed to provide him with any treatment at all.

114.    Defendants created the harm that caused Mr. Bender's injuries and death.

115.    Upon information and belief, at no time during Mr. Bender's incarceration at Frackville, did PHS take any steps to oversee its employees and representatives provided medical treatment to inmates at Frackville.

17

116.    Upon information and belief, DOC, Frackville and PHS did not have policies, practices and procedures in place that would ensure that inmates such as Mr. Bender would receive treatment for conditions such as that suffered by Mr. Bender.

117.    Upon information and belief, it was the policy of DOC, Frackville and PHS to delay treatment to inmates and to ignore medical conditions of inmates such as Mr. Bender and to instead provide no or minimal treatment despite knowing of potentially life threatening conditions.

118.    At all times relevant to this Complaint, DOC, PHS, and Frackville, with deliberate indifference, failed to develop and implement policies, practices, and procedures to ensure that Mr. Bender would receive medical care for his medical condition and would receive proper follow-up care and surgical intervention for his testicle.

119.    The harms suffered by Mr. Bender are the direct and proximate result of the policy, practice, and custom of DOC, PHS and Frackville of refusing or delaying inmates' necessary treatment with medical specialists, or otherwise interfering with such treatment.

120.    DOC, PHS and Frackville failed to take steps to ensure that information regarding inmates such as Mr. Bender – including but not limited to the inmates' reports of injuries, the results of examinations and tests, and the diagnoses of disorders – were promptly communicated to the inmates' other medical and mental health providers working in the Department of Corrections and the Pennsylvania Prison Bureau so that medical services were coordinated in such a way as to have avoided the harms sustained by Mr. Bender.

121.    At all times relevant to this Complaint, all defendants were deliberately indifferent to the serious medical needs of Mr. Bender.

122.    At all times relevant to the Complaint, the conduct of all defendants, their agents,

18

servants and/or employees, was intentional, willful, reckless, and grossly negligent with respect to Mr. Bender's rights under federal and state law.

123.    Mr. Bender's cancer was a permanent disability and led to his death on July 7, 2011.

124.    As a direct and proximate result of defendants' conduct, Mr. Bender suffered substantial damages, including pain and suffering, embarrassment, emotional distress, and loss of the enjoyment of life.

125.    Mr. Bender required expensive surgery and rehabilitation in an effort to prevent his cancer from taking his life.

126.    As a direct and proximate result of the defendants' actions, Mr. Bender was deprived of rights, privileges and immunities under the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution and in particular the right to be free from cruel and unusual punishment, the right to be provided proper and adequate medical treatment and the right to due process of law.

127.    The Site/Regional/State Medical Director from PHS, Frackville and the Department of Corrections supervised and were aware of all actions of defendants and approved defendants' intentional and willful refusal to provide proper and appropriate medical care to Mr. Bender.

128.    The Site/Regional/State Medical Director reviewed and signed off on the consultation records for the treatments provided to Mr. Bender.

**COUNT ONE**
**Plaintiff v. Nicholas Scharff, M.D**
**Federal Constitutional Claims**

129.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through

128, inclusive, of her Complaint as if the same were set forth at length herein.

130.    Dr. Scharff was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

131.    Dr. Scharff was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Dr. Scharff's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

132.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Dr. Scharff for violation of his constitutional rights under color of law.

133.    As a direct result of the actions and inactions of Dr. Scharff, Mr. Bender suffered the harms as described above.

### COUNT TWO
### Plaintiff v. Scott Sterling, D.O.
### Federal Constitutional Claims

134.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 133, inclusive, of her Complaint as if the same were set forth at length herein.

135.    Dr. Sterling was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

136.    Dr. Sterling was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical

20

attention that he required.  Dr. Sterling's actions/inactions were taken with deliberate

indifference to Mr. Bender's serious medical needs.

137.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C.

Section 1983 against Dr. Sterling for violation of his constitutional rights under color of law.

138.    As a direct result of the actions and inactions of Dr. Sterling, Mr. Bender suffered

the harms as described above.

<strong>COUNT THREE<br>Plaintiff v. Robert Schorschinsky, D.O.<br><u>Federal Constitutional Claims</u></strong>

139.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through

138, inclusive, of her Complaint as if the same were set forth at length herein.

140.    Dr. Schorschinsky was deliberately indifferent to Mr. Bender's serious medical

needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment

under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due

process of law under the Fourteenth Amendment to the United States Constitution.

141.    Dr. Schorschinsky was aware of Mr. Bender's serious medical condition,

failed/refused to document his condition and failed to take steps to ensure that Mr. Bender

received the medical attention that he required.  Dr. Schorschinsky's actions/inactions were taken

with deliberate indifference to Mr. Bender's serious medical needs.

142.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C.

Section 1983 against Dr. Schorschinsky for violation of his constitutional rights under color of

law.

143.    As a direct result of the actions and inactions of Dr. Schorschinsky, Mr. Bender

suffered the harms as described above.

21

## COUNT FOUR
### Plaintiff v. Stanley Stanish, M.D.
### Federal Constitutional Claims

144.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 143, inclusive, of her Complaint as if the same were set forth at length herein.

145.    Dr. Stanish was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

146.    Dr. Stanish was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Dr. Stanish's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

147.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Dr. Stanish for violation of his constitutional rights under color of law.

148.    As a direct result of the actions and inactions of Dr. Stanish, Mr. Bender suffered the harms as described above.

## COUNT FIVE
### Plaintiff v. Dr. Richard Kosierowski
### Federal Constitutional Claims

149.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 148, inclusive, of her Complaint as if the same were set forth at length herein.

150.    Dr. Kosierowski was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due

process of law under the Fourteenth Amendment to the United States Constitution.

151.   Dr. Kosierowski was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Dr. Kosierowski's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

152.   Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Dr. Kosierowski for violation of his constitutional rights under color of law.

153.   As a direct result of the actions and inactions of Dr. Kosierowski, Mr. Bender suffered the harms as described above.

**COUNT SIX**
**Plaintiff v. Brian Shiptoski, D.O.**
**<u>Federal Constitutional Claims</u>**

154.   Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 153, inclusive, of her Complaint as if the same were set forth at length herein.

155.   Dr. Shiptoski was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

156.   Dr. Shiptoski was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Dr. Shiptoski's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

157.   Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Dr. Shiptoski for violation of his constitutional rights under color of law.

158.    As a direct result of the actions and inactions of Dr. Shiptoski, Mr. Bender suffered the harms as described above.

### COUNT SEVEN
### Plaintiff v. Renato T. Diaz, M.D.
### Federal Constitutional Claims

159.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 158, inclusive, of her Complaint as if the same were set forth at length herein.

160.    Dr. Diaz was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

161.    Dr. Diaz was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Dr. Diaz's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

162.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Dr. Diaz for violation of his constitutional rights under color of law.

163.    As a direct result of the actions and inactions of Dr. Diaz, Mr. Bender suffered the harms as described above.

### COUNT EIGHT
### Plaintiff v. Jack Robinson, RNS
### Federal Constitutional Claims

164.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 163, inclusive, of her Complaint as if the same were set forth at length herein.

165.    Nurse Robinson was deliberately indifferent to Mr. Bender's serious medical

24

needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

166.    Nurse Robinson was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Nurse Robinson's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

167.    Mr. Bender claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against Nurse Robinson for violation of his constitutional rights under color of law.

168.    As a direct result of the actions and inactions of Nurse Robinson, Mr. Bender suffered the harms as described above.

### COUNT NINE
### Plaintiff v. Daniel Zaremba, RN
### Federal Constitutional Claims

169.    Ms. Tretter hereby incorporates the allegations contained in paragraphs 1 through 168, inclusive, of her Complaint as if the same were set forth at length herein.

170.    Nurse Zaremba was deliberately indifferent to Mr. Bender's serious medical needs and thereby violated Mr. Bender's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Bender's right to due process of law under the Fourteenth Amendment to the United States Constitution.

171.    Nurse Zaremba was aware of Mr. Bender's serious medical condition, failed/refused to document his condition and failed to take steps to ensure that Mr. Bender received the medical attention that he required.  Nurse Zaremba's actions/inactions were taken with deliberate indifference to Mr. Bender's serious medical needs.

25