# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERRI TRETTER, Admin. of the Estate of WILLIAM BENDER,** | : : : | **CIVIL NO. 3:12-CV-0302** |
| | : | **(Judge Munley)** |
| **Plaintiff** | : : | |
| v. | : : | |
| **BRIAN SHIPTOSKI,** *et al.*, | : : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently ripe for disposition is a motion (Doc. 36) for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed on behalf of remaining Commonwealth defendants Scharff, Houser, Robinson, Wolfe and Zaremba[1] and a motion (Doc. 18) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Shiptoski, Schorschinsky, Stanish, Kosierowski, Diaz, Sterling and PHS Correctional HealthCare ("PHS"). For the reasons set forth below, the court will grant the motions in part and deny the motions in part.

## I.     Allegations of the complaint

Plaintiff Sherri Tretter ("plaintiff"), brings this action in her capacity as the Administratrix of the Estate of William Bender ("Bender") a state inmate who was

---

[1]The complaint against the Pennsylvania Department of Corrections and the State Correctional Institution at Frackville has been dismissed. (Docs. 57, 59-2, at 4-5).

incarcerated at the State Correctional Institution at Frackville prior to his death. Allegedly, beginning in January of 2009, Bender began complaining to each of the defendants of pain in his groin and a swollen left testicle. (Doc. 1, ¶ 32). "Between January 2009 and August 6, 2009 . . . PHS, the physician defendants and the nursing defendants were on notice of Mr. Bender's need for immediate medical attention and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment." (Id. at ¶ 57).

On February 17, 2009, Bender was seen by defendants Scharff and Wolfe but neither defendant documented his complaint of swollen testicles and no treatment was offered. (Id. at ¶ 35). On March 11, 2009, he was seen by defendant Robinson who failed to document Bender's repeated complaints of swollen testicles and failed to provide any treatment. (Id. at ¶ 36). "Despite the symptoms presented by Mr. Bender, defendants failed to undertake prompt and appropriate medical care and attention and/or failed to ensure that prompt and appropriate medical care and attention was provided to Mr. Bender. Instead, Mr. Bender was ignored and told that he would not be provided treatment. Further, he was not given an evaluation until August 6, 2009." (Id. at ¶ 49).

On August 6, 2009, defendant Sterling noted that Bender's right testicle could not be located and his left testicle moved posteriorly and documented a "grapefruit size mass" in his left testicle. (Id. at ¶¶ 38 59). Defendant Houser noted a scrotal growth and defendant Shiptoski recorded Bender's swollen scrotal area and indicated that it had been swollen for the past eight months. (Id. at ¶¶ 39-40). An August 22, 2009 ultrasound revealed a "left testicle absent and left hemiscrotum enlarged and filled with large complex mass . . .

Clinical correlation is suggested and further evaluation with MRI." (Id. at ¶ 60). Defendant Stanish "signed off on the radiologist report." (Id. at ¶ 61). On August 24, 2009, defendant Schorschinsky made a referral for a urologic consult. (Id. at ¶ 62).

No follow-up treatment was provided. On February 9, 2010, blood work was ordered by defendant Sterling following a triennial physical examination. (Id. at ¶ 65). On February 22, 2010, defendant Shiptoski noted a left inguinal hernia. (Id. at ¶ 66). The blood work "indicated the possibility of a liver carcinoma and showed an elevated LDH which is an indiction of acute chronic tissue damage." (Id. at ¶ 68). A second round of blood work was completed and it, too, indicated carcinoma and chronic tissue damage. (Id. at ¶ 69).

On March 17, 2010, defendant Sterling referred Bender for a urologic consult to rule out hepatic carcinoma. (Id. at ¶ 70). On March 24, 2010, Bender reported to defendant Shiptoski that he was having difficulty urinating. Defendant Diaz scheduled him for an additional diagnostic study. (Id. at ¶ 71). A March 25, 2010 ultrasound revealed abnormalities in the liver and pancreas and recommended that a CT scan be performed. (Id. at ¶ 72). On March 26, 2010, defendant Shiptoski documented scrotal pain and discomfort. (Id. at ¶ 73).

On April 2, 2010, defendant Shiptoski ordered Tylenol for Bender. (Id. at ¶ 74). On April 4, 2010, Bender complained to defendant Zaremba of abdominal pain and reported that he had a hernia. (Id. at ¶ 75). On April 5, 2010, defendants Sterling and Stanish decided that because a liver mass was indicated, Bender should be transferred to St Catherine's Medical Center Emergency Room. (Id. at ¶¶ 76-77). An ultrasound of his scrotum and a CT scan of his pelvis and abdomen revealed a "large left testicle calcification, no blood flow and

multiple masses consistent with metatastic disease, most likely testicular carcinoma." (Id. at ¶ 79). He was transported back to the prison and was administered two Vicodin and cleared to return to the cell block by defendant Zaremba. (Id. at ¶ 80). The following day, defendant Sterling documented Bender's metatstatic cancer and approved his transport to Altoona Hospital. (Id. at ¶ 81). "On April 7, 2010, Mr. Bender underwent a left radical orchiectomy and was found to have multiple low attenuation lesions throughout his liver consistent with diffuse hepatic metastatic disease, extensive retroperitoneal adenopathy with multiple nodal masses present, and a large testicular mass, widespread pulmonary parenchymal metatases with extensive lymphovascular invasion." (Id. at ¶ 83). He was diagnosed with Stage III malignant non-seminoma left testicle cancer that spread to his liver, abdomen and lungs. (Id. at ¶¶ 87-88). He began chemotherapy within a week of the surgery. (Id. at ¶ 84). He continued to undergo treatment until his death on July 8, 2011. (Id. at ¶ 86).

It is alleged that various policies of PHS, including *inter alia*, deliberate indifference to specialized medical care, deliberate indifference to and interference with necessary treatment with medical specialists, and deliberate indifference to follow-up medical care, directly and proximately violated Bender's constitutional rights. (Doc. 1-1, at ¶¶ 186-92).

**II.     Motion for Judgment on the Pleadings**

    **A.     Standard of Review**

When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001). The motion can be granted only if no relief could be afforded under any set of facts that could be provided. Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991); see also Cardio–Medical Associates, Ltd. v. Crozer–Chester Med. Ctr., 536 F. Supp. 1065, 1072 (E.D. Pa.1982) ("If a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiffs claim for relief, motions for judgment on the pleadings should be denied."). However, the court need not adopt conclusory allegations or statements of law. In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1125 (D. Del. 1988). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988).

    **B.     Discussion**

        1.     Constitutional Claims

          *a.     Eighth Amendment*

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Bender alleges that defendants Scharff, Houser, Robinson, Wolfe, and Zaremba violated his Eighth Amendment right to adequate medical care. There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103–105 (1976). In order to set forth a cognizable claim, plaintiff must allege a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The "deliberate indifference" prong requires that the defendant actually know of and disregard "an excessive risk to inmate health and safety." Farmer, 511 U.S. 825, 837 1994). Circumstantial evidence can demonstrate subjective knowledge if it shows that the excessive risk was so obvious the official

6

must have known about it. Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference where the prison official knew of a prisoner's need for medical treatment and intentionally refused to provide it, delayed necessary medical treatment for a non-medical reason, or prevented a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." Id. In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

The allegations that defendants wholly denied Bender medical treatment for pain in his groin and a swollen left testicle between January 2009 and August 6, 2009, and that Bender was denied adequate medical treatment for his condition from August 6, 2009 until April 6, 2010, when he was transferred to Altoona Regional Hospital for

treatment of metastatic cancer, are sufficient to state an Eighth Amendment claim in that they adequately set forth "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious," Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The Eighth Amendment claim will go forward against defendants Scharff, Houser, Robinson, Wolfe, and Zaremba.

### b. Conspiracy

Counts thirteen and twenty through twenty-three contain allegations that the Commonwealth defendants engaged in a widespread conspiracy to deny Bender "access to the courts and to due process and cover-up the wrongful assault and punishing [ ] Bender." (Doc. 1-1, ¶¶ 199-201; 255-57, 263-65, 271-73, 279-81). In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff

must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  See id.; Rose, 871 F.2d at 366.  Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16.

      The complaint is devoid of specific facts that tend to show that defendants reached some understanding or agreement or plotted, planned and conspired together to deprive Bender of a protected federal right.  Rather, it is plagued with subjective suspicions and unsupported speculation, which is insufficient to state a conspiracy claim.  It is clearly established that no material issue of fact remains to be resolved and that the defendants are entitled to judgment as a matter of law on the conspiracy claims alleged in counts thirteen and twenty through twenty-three.

2.   State Law Claims

a.   *Intentional Infliction of Emotional Distress*

Counts thirteen and twenty through twenty-three contain allegations that the Commonwealth defendants intentionally inflicted emotional distress upon Bender. (Doc. 1-1, ¶¶ 198, 254, 262, 270, 278). Defendants contend that the doctrine of sovereign immunity protects a state official from such a claim. As a general matter, the doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials and its employees when those officials and employees are "acting within the scope of their duties." 1 PA. CONS. STAT. ANN. § 2310. See also Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000). There are, however, nine exceptions to the sovereign immunity bar. These exceptions are set forth at 42 PA. CONS. STAT. ANN § 8522(b) and are to be "strictly construed and narrowly tailored." See Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Commw. 2005). Consequently, for defendants to successfully invoke the doctrine, they must demonstrate that their conduct does not fall within one of the exceptions to sovereign immunity and that they were acting within the scope of their employment at the time in question.

As to the first query, the tort of intentional infliction of emotional distress does not fall within one of the enumerated exceptions. See Fischer v. Pennsylvania State Police, Civ. No. 7–1653, 2009 WL 650251 at * 12 (M.D.Pa. March 10, 2009) (stating that a claim for intentional infliction of emotional distress against the Pennsylvania State Police is barred by sovereign immunity). And there is no indication that

defendants were acting in any capacity other than in the regular course and scope of their duties. Indeed, every indication from the complaint is that the defendants were performing according to their prescribed duties. Consequently, defendants Scharff, Houser, Robinson, Wolfe, and Zaremba are entitled to sovereign immunity on the intentional infliction of emotional distress claims contained in counts thirteen and twenty through twenty-three.

### b.     *Remaining State Law Claims*

The court will retain supplemental jurisdiction over the remaining state law claims of negligence set forth in counts thirteen and twenty through twenty-three. and the wrongful death and survival actions contained in counts twenty-five and twenty-six. 28 U.S.C. § 1367(a).

### III.   Motion to Dismiss

#### A.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of

11

public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

### B. Discussion

#### 1. Constitutional Claims

##### *a. Eighth Amendment*

As with the Commonwealth defendants, the allegations that defendants Shiptoski, Schorschinsky, Stanish, Kosierowski, Diaz and Sterling wholly denied Bender medical treatment for pain in his groin and a swollen left testicle between January 2009 and August 6, 2009, and that Bender was denied adequate medical treatment for his condition from August 6, 2009 until April 6, 2010, when he was transferred to Altoona Regional Hospital for treatment of metastatic cancer, are sufficient to state an Eighth Amendment claim in that they adequately set forth "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious," Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

As concerns the Eighth Amendment allegations against PHS, (Doc. 1-1, ¶¶ 185-94), it is well settled that a municipality may only be liable under § 1983 when the alleged constitutional transgressor implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91, 694 (1978). "The same standard applies to a private corporation . . . that is acting under color of state law." Thomas v. Zinkel, 155 F. Supp.2d 408, 412 (E.D.Pa .2001) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir.2003)

(recognizing that "[i]n order for PHS to be liable, [a plaintiff] must provide evidence that there was a relevant PHS policy or custom" (citation omitted)).  A policy is defined as a " 'statement, ordinance, regulation, or decision officially adopted and promulgated by [an entity's] officers.' "  Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir.1991) (quoting Monell, 436 U.S. at 690).  A custom consists of " 'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.' "  Id. (quoting Monell, 436 U.S. at 691).

Once a policy or custom is identified, a plaintiff must establish that the municipality or private entity maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused.  City of Canton v. Harris, 489 U.S. 378, 389 (1989).  Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of the alternatives for preventing them, "but either deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard."  Simmons, 947 F.2d at 1064; see also Bd. of County Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997) (stating that "[i]f a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the

'deliberate indifference'—necessary to trigger municipal liability." (citing City of Canton, 489 U.S. at 390 n. 10)). In addition, a plaintiff must also prove that the policy or custom was "the proximate cause of the injuries suffered." Beck v. City of Pittsburgh, 89 F.3d 966, 972 n. 6 (3d Cir. 1996) (citation omitted).

The complaint is wholly devoid of factual allegations that would show that PHS's policies caused injuries to other inmates in the past. Natale, 318 F.3d at 582 (noting that the standard of deliberate indifference requires that PHS " 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.' " (quoting Farmer, 511 U.S. at 837)). There are no factual allegations of prior constitutional deprivations that would put PHS "on notice" that new policies were appropriate, Bd. of County Comm'rs, 520 U.S. at 407, or that PHS "deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction," Simmons, 947 F.2d at 1064 (footnote omitted). It is therefore concluded that the complaint fails to state a plausible claim against PHS under § 1983, and accordingly, the motion will be granted with respect to Eighth Amendment claim alleged against this defendant in count twelve.

### b. *Conspiracy*

As discussed *supra*, the complaint is devoid of specific facts that tend to show that defendants reached some understanding or agreement or plotted, planned and conspired together to deprive Bender of a constitutional right. (Doc. 1-1, ¶¶ 207-09; 215-17; 223-25; 231-33; 239-41; 247-49). Consequently, the conspiracy claims in

counts fourteen through nineteen are  subject to dismissal.

### 2    State Law Claims

The court will retain supplemental  jurisdiction over the state law claims of negligence in counts fourteen through nineteen, count twenty-four, as to PHS only, and the wrongful death and survival actions contained in counts twenty-five and twenty-six.  28 U.S.C. § 1367(a).

## IV.    Conclusion

For the above reasons, the court will grant the motions (Docs. 18, 36) in part and deny the motions in part.  An appropriate order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: April 21,  2015